**GOODMAN et v
PROVIDENT CREDIT CO et**

Ohio Common Pleas, Hamilton Co

Decided Dec 6, 1937

Sol Goodman, Cincinnati, for plaintiffs. J. G. Stewart, Cincinnati, and Wm. Thorndyke, Cincinnati, for defendants.

**OPINION**

By MORROW, J.

The plaintiffs are attorneys at law and members of the committee on the unauthorized practice of law, of the Cincinnati Bar Association, and have brought this suit in behalf of themselves, the public and the courts. The defendants are engaged in the collection business in the city of Cincinnati.

The plaintiffs say that as attorneys at law they have an exclusive franchise to engage in the practice of law, and that all other members of the Bar, as well as themselves, complied with the rules as to education and moral qualifications, and passed an examination, under authority of the Supreme Court of Ohio, wherefore such franchise was granted to them. They say further that laymen and corporations cannot and are expressly forbidden by law to engage in the practice of law in Ohio,

either directly or indirectly, but the plaintiffs charge that the company defendant and individual defendants have engaged in the practice of law by and through agents, and have set forth in detail in their petition in this case just how said defendants engaged in the practice of law in connection with their collection business.

So far we have indicated only the substance of the petition filed in this case, which winds up with the statement that plaintiffs, and all others similarly situated, sustained irreparable damage in that the standing of their profession is lowered, by reason of the acts set forth as having been committed by defendants, and asks that they be enjoined from engaging in the unauthorized practice of law. The petition is signed by all the members of this Bar Association committee, and the cause was tried by a judge of this court, with the result that a decree █ of injunction was entered by him, which, among other things, enjoined the following acts:

"4. Preparing and/or filing suits in courts of record throughout the state of Ohio in order to collect accounts for their customers, either by themselves or acting through members of the Bar and through other laymen in the collection of such accounts.

"5. To contract with their customers for a commission or compensation for effecting a collection by means of supplying legal services for such purpose.

"6. By rendering and/or furnishing legal service to persons, firms and corporations, customers of said defendants, who entrust said defendants with the collection of debts, claims and demands, and/or holding themselves out as practicing law by being able to collect such claims by the use of legal services and/or preparing and filing suits, and otherwise as set forth above, by hiring an attorney at law to carry on the work of the practice of law for customers.

"8. By furnishing the service of an attorney to such persons, firms and corporations, customers of the defendants, which attorney as an agent and employee of the defendants is to prepare pleadings and file them, prosecutes and/or defends suits at law and/or other legal proceedings for and on behalf of such persons, firms and corporations, customers of the defendants, in the courts of the state of Ohio."

Thereafter certain charges of contempt were filed by the plaintiffs and another judge of this court, upon motion, ordered plaintiffs to make said charges of contempt definite in certain particulars.

This matter has come on to be heard upon the citation of defendants requiring them to show cause why they should not be held in contempt of court, for violating the provisions of a certain decree of injunction, and the matter was submitted to the court upon an agreed statement of facts.

There has been filed a brief by plaintiffs, two briefs by attorneys for defendants and a third brief by one who styles himself, "first, a friend of the plaintiff and a member of the Bar," "second, as a friend of defendant." He also states "There has at no time been paid to the undersigned any fees, and my reason for addressing Your Honor is mainly to protect the plaintiffs from themselves." This brief also winds up with the statement that the writer is also filing the brief as a friend of the court. He therefore appears in an amiable triple capacity.

Copies of certain written instruments are submitted with the agreed statement of facts, and these were the contract forms used by defendants in their dealings with creditors who desired to collect their accounts through defendants' efforts.

At the outset of this case we must remember that the profession of attorney-at-law harks back to the advocates of ancient Greece, the Roman cognitors, procuritors, advocates and jurisconsults, as well as the barristers and solicitors of England and the American colonies.

Plaintiffs state that they have an exclusive franchise to engage in the practice of law, having certain educational and moral qualifications, and having passed an examination prescribed by the Supreme Court of this state, and in this connection it is interesting to point out that in the year 1402 by Statute 4 Henry IV, c.18, it is provided:

"That all attorneys shall be examined by the justice; * * * that they be good and virtuous and of good fame."

Also it is to be remembered that attorneys are officers of the court, and "as such are accorded certain privileges for the benefit of the general public, not for their own advantage * * * that they are clothed in some measure with the court's power * * * the right to command the court's processes of summons and subpoena; and the court's officers are at their call to execute their

will on behalf of their clients for many purposes. * * * Lawyers are bound to respect and obey the court, to aid it in the due administration of justice, and for failure so to do, or for any other misconduct which renders them unworthy to occupy their office, their license may be revoked." Thornton on Attorneys-at-law, Vol. 1, par. 13, pp. 15 and 16.

It has also been held in certain jurisdictions that an attorney-at-law is a public officer. See Thornton, p. 16, par. 14.

The agreed statement of facts (with the exception of an addition later set forth herein) reads as follows:

1. That the defendant J. G. Cotton is the owner of and doing business as Provident Credit Company and personally conducts said business, that William F. Hall is an employee of said J. G. Cotton and has no voice in the conduct of said business; and his said business is the business of collection and purchase of liquidated claims and accounts for and from their customers.

2. (a) That said J. G. Cotton has obtained, from creditors, written instruments (copy of which is attached to the amended specifications, marked "Exhibit 2") and by counsel, brought suit in his own behalf to recover upon the accounts, notes and like indebtedness referred to therein.

(b) That said J. G. Cotton has purchased, from creditors, accounts, notes and like indebtedness, for cash, and has by counsel, brought suit on his own behalf to recover thereon. (Exhibit A-B) hereto attached and made a part hereof.

(c) That said J. G. Cotton has purchased, from creditors; accounts, notes and like indebtednesses, for part cash and a promise to pay the creditor a stipulated percentage of any sums recovered and has by counsel brought suit, in his own behalf, to recover thereon. (Exhibit C hereto attached and made a part hereof).

(d) The said J. G. Cotton has purchased, from creditors; accounts, notes and like indebtednesses for a promise to, at his expense, use his best efforts to effect collection, to certify or correct debtors name, verify or locate debtors residence, his assets, employment and do such other lawful things as, in his opinion, may tend to effect collection, together with a promise to pay the creditor a stipulated percentage of any sums recovered, and having rendered the services required as a part of said consideration, without effect, has by counsel brought suit, in his own behalf,

to recover thereon. (Exhibit D-E herein attached and made a part hereof).

(e) That said J. G. Cotton has purchased, from creditors; accounts, notes and like indebtednesses, for a promise to pay the creditor a stipulated percentage of any sums recovered and by counsel brought suit in his own behalf to recover thereon. (Exhibit F hereto attached and made a part hereof).

3. (a) That said J. G. Cotton has recommended, without being compensated therefor, members of the Bar, as being particularly qualified to handle collection cases, (b) and in some matters, cooperated with counsel, by: verifying or obtaining the correct debtor's name, verifying or locating debtors residence, his assets, employment, and obtained such other facts as might be of assistance to counsel in enforcing judgment. In such matters, being compensated by the creditor only, for said services in an amount based on a percentage of the amount recovered.

4. (a) That said J. G. Cotton has, as agent for creditors, in some matters, arranged with counsel, on behalf of the creditor, as to the fee to be paid; (c) and in some matters has cooperated with counsel and been compensated therefor as set forth in Paragraph 3-b. Exhibit 2-A-B-C-D-E and F are attached hereto and made a part hereof. as though fullly written and set out herein. * * *

By the agreed statement of facts, with exception of Paragraph 2 (b) the defendants seem to admit their participation, directly or indirectly, in the practice of law, and their assumption of a position intermediate between the "customer" or "creditor" and the attorney filing and prosecuting a law suit on the claim.

The injunction was properly issued to prevent this, and we will advert later to authorities bearing on that question. However, we will take up the agreed statement of facts in connection with the exhibits referred to therein.

The agreed statement of facts refers to copies of certain written instruments indicating the relationship between defendants, and the creditors availing themselves of their services, and we desire now to discuss these in order.

As to Exhibits A and B, which are contracts whereby defendants effect the outright purchase for cash of the accounts of creditors, it is admitted by plaintiffs that there is no violation of injunction.

As to the other written instruments, it

is claimed by plaintiff that every one of these sets forth a contract between a creditor desirous of obtaining collection of accounts and the defendants, holding themselves as a collection instrument, which, if acted upon, would constitute contempt of court, being unauthorized practice of law and a violation of the injunction in this case.

We refer to Exhibit 2, which provides as follows:

"Collection Contract "Department Provident Credit Co., agrees to handle collection items for the undersigned upon the following terms and conditions:

"Rates: No collection—No commission
"Accounts over $10.00—25%
"Accounts under $10.00—50%

"When collection is made by negotiation of a loan for the debtor or through a magistrate or attorney-at-law (as hereinafter provided) or by installment payments, and on the first aggregate of $100.00 or part thereof collected, the charge is 50%.

"Commission is charged upon payments made to either creditor or company or upon acceptance by creditor of a new obligation in place of the old, or when further service is ordered stopped, before cancellation by the company. Creditor shall furnish completely itemized statements upon request. Failure of creditor to cooperate promptly and report payments made shall be considered service ordered stopped.

"No filing charge is to be allowed by the company, but when incorrect addresses are furnished it a tracing charge of 50c shall be made, which shall be refunded upon collection being made.

"Reports: Creditor shall report to the company all payments made to them at once. The company will report in accordance herewith upon written request.

"Loans: If the company deems it advisable to negotiate a loan for the debtor, to accelerate or facilitate collection of any account, it may do so and retain the proceeds thereof until the same is fully paid.

"No legal service: This company does not practice law, but if debtor refuses to pay without suit, will at creditor's request cooperate with an attorney-at-law, giving him all facts and information obtained, which may assist him to proceed as he and creditor deem advisable.

"Alteration of this contract shall not be made either verbally or in writing.
 "Provident Credit Co.
"Dated ......... ..By ............. Agt.

"I hereby certify: That the claims placed with the company for collection herewith are just, unpaid and legally due me, and in consideration of the above and services to be rendered by the Provident Credit Co., hereby assign said claims to said company with full power to collect, adjust, settle and compound same and to act as my attorney-in-fact, for me and in my stead.

......................
"Client's Name.

......................
Official who signs."

In this contract we are interested particularly in the following language:

"When collection is made by negotiation of a loan for the debtor or through a magistrate or attorney-at-law (as hereinafter provided) or by installment payments, and on the first aggregate of $100.00 or part thereof collected, the charge is 50%."

"No legal service: This company does not practice law, but if debtor refuses to pay without suit, will at creditor's request, cooperate with an attorney-at-law, giving him all facts and information obtained, which may assist him to proceed as he and creditor deem advisable."

"I hereby certify: That the claims placed with said company for collection herewith are just, unpaid and legally due me, and in consideration of the above and services to be rendered by the Provident Credit Co., hereby assign said claim to said company with full power to collect, adjust, settle and compound same and to act as my attorney-in-fact, for me and in my stead."

It will be noted that this contract provides certain charges if the collection is made "through a magistrate or attorney-at-law;" also it is provided that "the company will cooperate with an attorney-at-law," and finally in the last paragraph the company is given "full power to collect, adjust, settle and compound same."

It is also noteworthy that the dotted line for signature is over the words "Client's Name," indicating that the credit company looks upon the creditor as a client. It is accurate to speak of lawyer and client, but not of collection agency and client, though this may be included in the secondary meaning of the word.

"Client. One who employs and retains an attorney or counsellor to manage or

defend a suit or action to which he is a party, or to advise him about some legal matters." Bouvier's Law Dictionary.

In short, by this Exhibit 2, it is undoubtedly contemplated that a charge may be made for efforts to collect, supplemented by attorneys' services and the words "with full power to collect" imply the use of the law courts. The words "No Legal Service" are contradicted by the other provisions of contract above quoted.

The use of said contract, as set forth in the agreed statement of facts, is a violation of §§4, 5, 6 and 8 of the injunction.

In short, contract (Exhibit 2) as admittedly acted upon in Agreed Statement of Facts, is a violation of this injunction.

On its face the use of Exhibit C is not in violation of the injunction.

It provides in part that accounts are purchased outright by defendant company, the consideration being part cash and part a note. Exhibit C is used to effect an apparently outright sale of account, but if the note which passes as part consideration is not a negotiable instrument, being, for example, a promise to pay an indefinite amount, depending upon recovery, then the injunction is also violated by such use of said contract. It will be noted that the Agreed Statement of Facts sets forth that Exhibit C provides for a purchase "for part cash and a promise to pay the creditor a stipulated percentage of any sums recovered, and has by counsel brought suit in his own behalf to recover thereon."

This seems to be an admission that such sort of note is part consideration. Any purported sale of an account outright, to the defendant company, when the consideration in whole or in part is a promise to pay the assignor a stipulated percentage of the amount recovered, is but a transparent cloak, whereby by a legal fiction it is attempted to conceal the actual transaction contemplated, and wherein the creditor is still interested, and has a right of property in the claim, depending in size and proportion upon the ultimate amount recovered.

Exhibit C, therefore, as admittedly used in Agreed Statement of Facts violates the same injunction, paragraphs 4, 5, 6 and 8.

What has been said about Exhibit C applies also to Exhibits D and E, and the agreed statement of facts applicable there-to. These contract forms provide the consideration of a "sum equal to 50% of the amount recovered less accrued interest," (the language in Exhibit D), and "an amount equivalent to 50% of the amount realized on said accounts, excluding interest, upon the payment or settlement of same as herein provided," (language in Exhibit E).

We are also concerned with Exhibit F and the agreed statement of facts (e) whereby it is agreed again that the company has purchased accounts for a promise to pay the creditor "an amount equivalent to 50% of the amount realized on said accounts, excluding interest, upon the payment or settlement of the same as herein provided."

Such a transaction, denominated "an outright purchase," is a subterfuge and sham. In view of the creditor retaining a lively interest in the outcome of any efforts to collect which the defendant company may expend, and whether we are concerned with a whole or part payment by such a promise, the relation of creditor and collection agency still exists, although the collection agency denies the same; asserts outright ownership and employs attorney in its own behalf.

The agreed statement of facts, paragraph 3 (a), sets forth that the defendant company recommends members of the Bar to the creditor, helps the said member prepare the case, and when the case is successfully completed, is compensated by creditor for services in an amount based on percentage of the amount recovered.

In view of what is said in authorities I will quote, this is such an interference and meddling with the confiden- tial relationship between attorney and client, and participation in legal matters, as to constitute a violation of the injunction paragraphs, 4, 5, 6 and 8.

Paragraph 4 (a) of the Agreed Statement of facts states that the defendant, as agent for creditors, arranged with counsel in behalf of the creditor as to the fee to be paid, and cooperated with counsel, and was paid for such services in an amount based on a percentage of the amount recovered. This is also participation in the practice of law, and violates the paragraphs of the injunction above stated.

There was added to the agreed statement of facts, and after the submission of this case, that a certain other proceeding was accomplished by the defendants from time to time, namely the purchase

by defendant company of parts of an account. The addition referred to is as follows:

"Assignment
"To John G. Cotton, dba
"Provident Credit Co.

"For and in consideration of $........ from John G. Cotton, dba Provident Credit Company, receipt whereof is hereby acknowledged, I, or we, do hereby irrevocably assign to and set over unto John G. Cotton, dba Provident Credit Company a part and/or interest in and to the above listed liquidated accounts that are due to me from the respective parties and debtors herein above set forth."

We look upon this, under the circumstances of the case, as a subterfuge. Of course, one can sell a part as well as a whole of merchandise or credits. However, there are many circumstances in this case to lead the court to the conclusion that by the use of this assignment the defendant is seeking some avenue of escape from the rule enumerated in State of Missouri v C. S. Dudley & Co., No. 34682 Supreme Court of Missouri, later referred to in this opinion.

If such a proceeding is allowed defendants may sue on the claim through their own lawyer and then, the claim having been collected in whole or in part, approach the creditor and arrange for payment, they having collected incidentally the creditor's part, or possibly only improved the status of the creditor's part of the claim, this having been done through legal process and by the employment of defendants' attorney.

As we gather the meaning of this addition to the agreed statement of facts, in connection with the remainder of such agreed statement, such has been the practice of defendants, and this is contempt.

We are holding that such assignment lends itself readily to such use, and that the defendants have so used such assignment in such manner.

The agreed statement of facts, including the setting forth of the contracts above quoted, indicates a relationship between the creditor and the collection agency that dictates the participation indirectly, and sometimes directly, in the practice of. the law by the collection agency.

The recent authorities include **Goodman v Beall, 130 Oh St 427, 5 O.O. 52**, and State of Missouri v C. S. Dudley & Co., No. 34682, Supreme Court of Missouri, September Term, 1936. The latter case was taken to the Supreme Court of the United States,

which has refused to review the same, thereby making it final.

The latter case also concerns a collection agency accused of wrongful participation in the practice of law, and the Supreme Court of Missouri emphasizes in its condemnation of practice of defendant the confidential relation between attorney and client. The court says:

"The attorney is the agent of the respondent, and not of the client. The duty the attorney owes his client is thereby destroyed, because the attorney's devotion to the client's interest is not uninfluenced by the duty he owes the respondent."

(Citing People v People's Trust Co., 167 N. Y. S. 767), which states:

"The relation between attorney and client is confidential in the extreme."

This court also cites several cases, quoting as follows:

"Ordinarily, a contract between an attorney and one not an attorney, providing that the latter shall procure the employment of the former by a third person for the prosecution of suits to be commenced in consideration of a fee to be procured or collected therein, is void as against public policy, independent of statutes prohibiting the same."

The court says further:

"The agent or agency does not have a right to make a business of soliciting claims and then farming them out to lawyers for collection as the respondent does in conducting its business."

And finally the rule is laid down, which we desire to emphasize and follow:

"We therefore conclude that the respondent has the right to collect debts for others provided it does not employ an attorney, or promise to employ one, or threaten the debtor with suit if he does not pay. If collections cannot be made without the services of an attorney, the respondent should return the claim to the creditor who should be free to select and employ his own attorney. The respondent should not engage directly or indirectly in the business of employing an attorney for others to collect claims or to prosecute suits therefor, nor have any interest in the fee earned by the attorney for his work."

We find that in this case this pronouncement, (which has been given cer-

tainly a formal sanction by the Supreme Court of the United States,) has been violated by the defendants in this case. The relationship between attorney and client negatives the presence of an intermediary —a third party, who creates the relationship, being the broker of legal services, as to the client, and the paymaster, as to the lawyer.

At first blush it may not seem as important in an ordinary collection case, involving the liquidation of commercial accounts, to maintain the confidential character of the relationship between attorney and client, but there is no authority certainly for holding that as to certain cases lawyer and client are bound by the loosest ties that can connect a principal and agent, whereas the confidential relationship should be imposed as to other matters.

We mean no disrespect to collection agencies, which perform a useful function, when we say that the responsibility, relationship and duty they bear toward their customers differ widely from the bond that tradition, history, sentiment and the law have forged between lawyer and client. However, one of the briefs submitted in this case is replete with such phrases and words as "super-human attitude on the part of the Bar," "bought and paid for legal staffs," "sweat shop counsel," "sanctimonious" and "extremely obnoxious."

Over a century ago England was rocked by a royal scandal that "shocked the whole foundation of English society." The sensation last year over the abdication of King Edward VIII was mild in comparison. The British queen was virtually brought to trial before the House of Lords, and her legal counsel braved the power and implacable hatred of the king, and his court, in the performance of duty to his client. In the vivid vernacular of the present day, the queen's counsel "had something on the king," and in a memorable and threatening speech he gave notice that duty to his client might impel him to accomplish consequences of the greatest import. I refer to the brilliant and erratic Brougham, who said:

"I once before took leave to remind your lordships * * * that an advocate, by the sacred duty which he owes his client, knows in the discharge of that office, but one person in the world, **that client and none other.** To save that client by all expedient means—to protect that client at all hazards and costs to all others, and among others to himself—is the highest and most

unquestioned of his duties; and he must not regard the alarm, suffering, the torment, the destruction, which he may bring upon any other. Nay, separating even the duties of a patriot from those of an advocate and casting them, if need be, to the wind. He must go on reckless of the consequences, if his fate it should unhappily be to involve the country in confusion for his client's protection." The Life and Times of Lord Brougham, Vol. 2.

This was an extreme statement made in the course of a notable oratorical effort, but was almost matched by the result of the ensuing labors of this counsel.

No such moral burden rests upon the shoulders of a collection agency, and there is nothing capricious, arbitrary, unfair or unreasonable in a policy which dictates that the relationship between lawyer and client remain, as throughout the centuries, a purely personal tie, unbroken by the interference of agent or interloper of any kind. Such relationship cannot subsist if the collection agency plays the part of an intermediary, as the exhibits and agreed statement of facts indicate to exist in the instant case. As a matter of principle, the relation between a commercial creditor client and his attorney is no different than the relationship between any other sort of client and his attorney.

Consider the patent absurdity of allowing an intermediary between a lawyer and client in other aspects of the practice of law, between the lawyer and his client charged with a capital offense, between the lawyer and his client immersed in a divorce suit, an action for criminal conversation, seduction, between a lawyer and his client desirous of disposing of a large estate by his last will and testament, or between a lawyer and his client in any case wherein the right of privileged communication (generally afforded by statute only otherwise as between priest and parishioner, physician and patient) is most highly prized and necessary.

Since the law is a profession, the lawyer an officer of the court, since the right to practice law is an exclusive franchise, and in view of the above citations, we have come to the conclusion that the injunction was properly issued, and has been violated as above stated, and for the reasons above given.